SO ORDERED: June 29, 2006.



Anthony J. Metz III
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ROBERT C. WILLIS, | ) | CASE NO. 05-17241-AJM-7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| KAREN WILLIS, | ) | |
| | ) | |
| Plaintiff, | ) | ADVERSARY PROCEEDING |
| v. | ) | |
| | ) | NO. 05-00531 |
| ROBERT C. WILLIS, | ) | |
| | ) | |
| Defendant. | ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT**

The Plaintiff filed on November 30, 2005 her Complaint to determine the dischargeability of certain debts owed by the Defendant, Robert Willis, under a divorce decree. Trial on the complaint was held on June 22, 2006 wherein the Plaintiff appeared in person and by counsel, Bret Clement. The Defendant appeared, pro se. The Court heard the testimony of the witnesses and

the arguments of counsel and now makes these findings and conclusions in accordance with Fed. R. Bankr. P. 7052.

**FINDINGS OF FACT**

1. The Defendant, Robert C. Willis ("Debtor"), is the Debtor in this Chapter 7 bankruptcy case which was filed on August 29, 2005 (the "Petition Date").

2. On February 12, 2001, the Marion County, Indiana, Superior Court entered a Consent Decree for Dissolution of Marriage and Waiver of Final Hearing (the "Decree"), *In Re The Marriage of Robert C. Willis and Karen Willis*, in Cause No. 49D11-0011-DR-001561.

3. Section 6.1 of the Decree provides that the Debtor agreed to pay maintenance to Karen Willis each month equal to one-half (½) of his current pension distribution until such time as the Debtor retires from active employment or such time as Karen Willis ("Karen") remarries.

4. Section 4 of the Decree awarded the parties equal right, title, and interest in and to the former marital residence located at 12 Miller Street, Canton, North Carolina 28716 (the "Property"), and awarded Karen the right to exclusive use of the residence so long as she did not remarry or co-habitate with a non-family member.  Section 5.1 of the Decree provided that the parties were equally responsible for the payment of the first mortgage to GMAC and that the Debtor was solely responsible for the second mortgage from the Bank of America.  The Decree further provided that the Debtor was monetarily responsible for the maintenance and upkeep of the Property.

5. Karen has not remarried or co-habitated with a non-family member.

6. The current amount of the payments that would be due to Karen under Section 6.1 of the Decree is approximately $390.00 per month.  Debtor has not made any payments pursuant to Section 6.1 of the Decree since the date of the filing of the Debtor's bankruptcy petition.  Ten (10) payments would have been due since that date, totaling $3,900.00.

7.    According to schedules filed in the Debtor's bankruptcy case, the balance owing to GMAC with respect to the obligation referred to in Section 5.1 of the Decree was $59,999.00 as of the date of the filing of the Debtor's bankruptcy petition. Debtor has not made any payments to GMAC on the obligation secured by GMAC's mortgage since the date of the filing of the Debtor's bankruptcy petition. Since the date of the filing of the Debtor's bankruptcy petition, Karen has made payments to GMAC totaling $7,366.45. One-half (½) of those payments (the Debtor's share) total $3,683.22.

8.    Prior to the filing of the Debtor's bankruptcy, Karen and the Debtor entered into an agreement that in lieu of paying the monthly maintenance payments described in Section 6 above to Karen, Debtor would retain the funds and make the entire monthly payment on the GMAC mortgage on the Property, since the monthly maintenance payments approximated the one-half (½) of the mortgage payment for which Karen was responsible under the Decree. As set forth in paragraph 7 above, Debtor ceased making the mortgage payments to GMAC upon the filing of the Debtor's bankruptcy petition and did not thereupon resume making the maintenance payments to Karen.

9.    According to schedules filed in the Debtor's bankruptcy case, the balance owing to Bank Of America with respect to the obligation referred to in Section 5.1 of the Decree was $8,336.00 as of the date of the filing of the Debtor's bankruptcy petition. Debtor has not made any payments to Bank of America on the obligation secured by Bank of America's mortgage since the date of the filing of the Debtor's bankruptcy petition. However, the testimony at trial established that the Bank of America obligation on the second mortgage was only the Debtor's obligation and that Karen is not liable for that debt. Nonetheless, the Decree provides that the Debtor shall indemnify and hold Karen harmless to the extent she pays the second mortgage payments to Bank of America, due to the Debtor's default in making such payments.

10. The Debtor has not made any payments for maintenance or upkeep of the Property since the date of the filing of the Debtor's bankruptcy petition.

11. Karen introduced into evidence detailed receipts which established that, since the date of the filing of the Debtor's bankruptcy petition, Karen has made payments for the maintenance and upkeep of the Property totaling $2,563.43. Of this amount, $128.67 was spent to maintain the Property's physical appearance (Karen's responsibility), leaving $2434.76 expended for the maintenance and upkeep of the Property.

12. Karen has a long history of medical problems. In 2001, Karen had a mastectomy due to breast cancer. Following the surgery, after a two (2) year period during which Karen temporarily moved to Missouri to care for her dying parents, Karen attempted to secure her old job. However, the State vocational representative determined that she could no longer perform her old job due to her health. While in Missouri caring for her dying parents, Karen briefly secured employment with Goodwill putting labels on soup cans. However, her carpel tunnel syndrome made it too painful to perform the work. Subsequent surgery failed to correct the problem and, in fact, made the problem worse. Karen was denied Social Security disability benefits (because she could still think), notwithstanding that she only has thirty percent (30%) usage of her left hand and sixty (60%) usage of her right hand.

13. Karen currently has approximately $42,000.00 that received as an inheritance in 2005.

14. Pursuant to Section 3.1.3 of the Decree, Karen currently is receiving $719.88 per month, which is one-half (½) of Debtor's net disposable military retired pay, via a Qualified Domestic Relations Order ("QDRO") which was issued concurrently with the Decree.

15. Karen has no other source of income other than the $719.88 monthly pension payments and to the extent that she can supplement her income by exhausting her inheritance.

16.     Karen's assets consist of the right to reside in the property and other rights granted to her under the Decree with respect to the Property, the balance of her inheritance as set forth in paragraph 13 above, household goods, clothing and furniture with no significant value, two (2) automobiles, one of which is worth $5,000.00 to $6,000.00 and which was inherited from her father, and a 1996 model year Subaru which barely runs.  She also has two (2) rings worth about $5,000.00 which were inherited from her mother, but which primarily have sentimental value to Karen and which she hopes to pass on to her daughters.

17.     Debtor is currently employed by U-Haul.  Schedule I of the Debtor's schedules show that he earns gross pay of $3,833.34 per month and show approximately $800.00 per month of other income.  Debtor will be entitled to additional pension benefits from his employment with U-Haul at some point in the future if his employment there continues.

18.     Prior to the filing of the Debtor's bankruptcy petition, Debtor filed a Petition with the Marion County Superior Court seeking to modify the Decree by seeking a sale of the Property.  The Court denied Debtor's Petition.

19.     Section 5.5 of the Decree provides that the party responsible for the payment of the obligations described in Section 5 of the Decree agrees to hold the other party harmless and to indemnify the other Party, including court costs and attorney fees.  The Complaint did not include a prayer for recovery of costs and attorney fees.  The Court sustained the Debtor's objection to evidence of attorney fees incurred by Karen with respect to this action, and therefore there is no evidence in the record upon which the Court can award attorney fees.

**CONCLUSIONS OF LAW**

1.     The Court has jurisdiction over Robert C. Willis and the matters contained in the above-captioned adversary proceeding pursuant to 28 U.S.C. § 157(I) and 28 U.S.C. § 1334.

2.     rhe cause of action set forth in the above-captioned adversary proceeding arises

out of Robert C. Willis' bankruptcy and is related to the Debtor's bankruptcy case. This is a core proceeding pursuant to 28 U.S.C. § 157(I).

3. The Debtor filed his bankruptcy case prior to October 17, 2005 and therefore the provisions of BAPCPA do not apply. [1]

4. Pre-BAPCPA §523(a)(5) provides that a debt "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child" in connection with a divorce decree is not dischargeable.

5. The obligation described in Section 6.1 of the Decree providing that the Debtor agreed to pay maintenance to Karen each month equal to one-half (½) of his current pension distribution until such time as the Debtor retires from active employment or such time as Karen remarries is an obligation to a former spouse of the Debtor for maintenance and support in connection with a divorce decree. The obligation is labeled as maintenance. Further evidence of the support nature of this obligation can be determined from the fact that the obligation in Section 6.1 is in addition to the separate QDRO provision giving Karen a fifty percent (50%) interest in the military retirement benefits.

6. The obligation described in Section 6.1 of the Decree is nondischargeable under 11 U.S.C. § 523(a)(5) in the Debtor's bankruptcy case. This includes the amount of $3,900.00 that was due from date of filing of the Debtor's bankruptcy petition to June 22, 2006, and all amounts which shall come due thereafter.

7. Under pre-BAPCPA §523(a)(15), debts that are in the nature of property settlement may be nondischargeable if (1) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor or (2) discharging the debt would result in a benefit to

---

[1] "BAPCPA" refers to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, applying to cases filed October 17, 2005 and after.

the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

8.  The obligations described in Section 5.1 of the Decree requiring that the Debtor pay one-half (½) of first mortgage to GMAC and that the Debtor was monetarily responsible for the maintenance and upkeep of the Property are in the in the nature of property settlement. The Debtor had an ownership interest in the Property as of the Petition Date and the Debtor's obligations described in Section 5.1 of the Decree preserve any equity in the Property which in turn would enhance the value of the Debtor's interest.

9.  The Debtor has the ability to pay the obligations under Section 5.1 of the Decree from his income or property that is in addition to the income or property of the Debtor that is reasonably necessary to be expended for the Debtor's maintenance or support of the Debtor or a dependant of the debtor. The detrimental consequences to Karen outweigh any benefit to the Debtor that would result from discharging such debt.

10. The obligations described in Section 5.1 of the Decree are nondischargeable under 11 U.S.C. § 523(a)(15) in the Debtor's bankruptcy case. This includes the amount of $3,683.22 that was due from the Debtor to GMAC that was paid by Karen and $2434.76 that was paid by Karen for upkeep and maintenance of the Property from the date of the Debtor's bankruptcy petition to June 22, 2006, and all such amounts which Karen shall incur thereafter.

11. Karen is not obligated on the debt owed to Bank of America with respect to the second mortgage on the Property and therefore the Court finds that such debt with respect to Bank of America is dischargeable. The Bank of America debt is secured by the Property in which Karen has an interest, and the Decree provides that, to the extent Karen is forced to pay the Bank of America debt, the Debtor must indemnify her for such amounts paid. To the extent the Debtor incurs such a debt owed to Karen, such debt shall be nondischargeable under 11 U.S.C. §523(a)(15).

## **JUDGMENT**

Based on the foregoing, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT the debt with respect to one half of the Debtor's military pension is a nondischargeable debt under §523(a)(5).  FURTHER,  the first mortgage obligation owed to GMAC and obligations with respect to the upkeep and maintenance of the property are nondischargeable debts under §523(a)(15).

# # #

Distribution:

Bret Clement, Attorney for the Plaintiff
Defendant/ Debtor, Pro Se
Chapter 7 Trustee
United States Trustee